UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DOUGLAS ROBERT YOUNG,

                            Plaintiff,

                                                                                         Case # 15-CV-6711-FPG

v.

                                                                                       DECISION AND ORDER

NANCY A. BERRYHILL,[1]
ACTING COMMISSIONER OF
SOCIAL SECURITY,

                            Defendant.
_____

## INTRODUCTION

Plaintiff Douglas Young ("Plaintiff") brings this action to challenge the final decision of the Acting Commissioner of Social Security ("the Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"). ECF No. 1. The Court has jurisdiction over this matter under 42 U.S.C. § 405(g).

Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. ECF Nos. 9, 11. For the reasons stated below, Plaintiff's motion (ECF No. 9) is DENIED and the Commissioner's motion (ECF No. 11) is GRANTED.

## BACKGROUND

On September 19, 2011, Plaintiff protectively filed an application for DIB under the Act. Tr. 15.[2] Plaintiff alleges disability since May 6, 2011 due to a back injury. Tr. 156. On March 6, 2014, Administrative Law Judge Michael W. Delvin ("the ALJ") issued a decision finding that Plaintiff was not disabled under the Act. Tr. 15-26. That decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on July 14, 2015. Tr. 1-5. Plaintiff then filed this civil action. ECF No. 1.

---

[1]         Nancy A. Berryhill is substituted for Carolyn W. Colvin pursuant to Fed. R. Civ. P. 25(d).
[2]         References to "Tr." are to the administrative record in this matter.

**LEGAL STANDARDS**

I. **Disability Determination**

The Act defines "disability" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d). Social Security Administration ("SSA") regulations outline the five-step process used to determine whether a claimant is "disabled" under the Act. 20 C.F.R. § 404.1520.

First, the ALJ must determine whether the claimant is engaged in any substantial gainful work activity. 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two and determines whether the claimant has a "severe" impairment or combination of impairments. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the claimant is not disabled. *Id.* If the claimant does have a severe impairment, the analysis proceeds to step three.

At step three, the ALJ must determine whether the claimant has an impairment (or combination of impairments) that meets or medically equals one of the conditions listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("the Listings"). If the impairment does meet or equal a condition in the Listings and the durational requirement (20 C.F.R. § 404.1509) is satisfied, then the claimant is disabled. 20 C.F.R. § 404.1520(d). If it does not, the ALJ will make a finding regarding the claimant's residual functional capacity ("RFC"), which is an assessment of what the claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). The RFC is then used at steps four and five. 20 C.F.R. § 404.1520(e).

The fourth inquiry is whether, given the claimant's RFC, the claimant can still perform his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform his or her

past relevant work, the claimant is not disabled. *Id.* If he or she cannot, the ALJ proceeds to step five.

At the fifth and final step, the ALJ must consider the claimant's RFC as well as his or her age, education, and work experience to determine whether the claimant can make an adjustment to other work for which there are a significant number of jobs in the national economy. 20 C.F.R. § 404.1520(g). If the claimant can make an adjustment to other work, then the claimant is not disabled. *Id.* If the claimant cannot make that adjustment, then the claimant is disabled. *Id.*

The burden of proving the first four elements is on the claimant, and the burden of proving the fifth element is on the Commissioner. *Bush v. Shalala*, 94 F.3d 40, 44-45 (2d Cir. 1996); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## II.     District Court Review

District Court review of the Commissioner's decision is not *de novo*. *See, e.g.*, *Richardson v. Barnhart*, 443 F. Supp. 2d 411, 416 (W.D.N.Y. 2006) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). The Commissioner's decision may only be set aside if it is not supported by "substantial evidence" or is the product of legal error. *See, e.g.*, *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (quoting *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)). Substantial evidence means "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess*, 537 F.3d at 127 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)) (internal quotation marks omitted).

## DISCUSSION

## I.      The ALJ's Decision

In this case, the ALJ analyzed Plaintiff's claim for benefits under the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity

since May 6, 2011, his alleged onset date. Tr. 17. At step two, the ALJ found that Plaintiff has the following severe impairments: chronic low back pain with documented disc disease and obesity. *Id.* At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a Listings impairment. Tr. 17-18.

The ALJ then determined Plaintiff's RFC. Tr. 18-24. Specifically, the ALJ found that Plaintiff could perform light work[3] with the following limitations:

> [H]e can occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk about four hours in an eight hour workday; sit about four hours in an eight hour workday; be allowed to sit for one to two minutes after standing for approximately 30 minutes and be allowed to stand for one to two minutes after sitting for approximately 30 minutes; occasionally push and/or pull 20 pounds; occasionally climb ramps and/or stairs, and balance; rarely stoop, kneel, crouch, and crawl; and never climb ladders, ropes, and scaffolds.

Tr. 18.

At step four, the ALJ found that Plaintiff's RFC allows him to perform his past relevant work as a glass finisher. Tr. 24. In the alternative, the ALJ moved on to step five and relied on testimony from a vocational expert ("VE"). Tr. 24-25. The ALJ adopted the VE's testimony that in light of Plaintiff's RFC, age, education, and work experience, Plaintiff could make an adjustment to other work for which there are a significant number of jobs in the national economy. Tr. 25. Specifically, the VE testified that Plaintiff could work as a counter clerk and an agricultural produce sorter. *Id.*

Accordingly, based on his findings at steps four and five, the ALJ found that Plaintiff was not disabled under the Act. Tr. 25-26.

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

**II.     Plaintiff's Challenge to the ALJ's Decision**

Plaintiff argues that remand is warranted because the ALJ erred in considering certain medical opinions and because the ALJ failed to consider Plaintiff's exemplary work history when determining his credibility. ECF No. 10. These arguments are addressed in turn.

**A. Medical Opinions**

SSA regulations require the ALJ to evaluate every medical opinion in the record, regardless of its source. 20 C.F.R. § 404.1527(c). When determining how much weight a given medical opinion should receive, the ALJ must consider the following factors: (1) whether the source of the opinion has examined the claimant; (2) the length, frequency, and nature of the treatment relationship; (3) whether the medical source presents relevant evidence to support the opinion; (4) whether the opinion is consistent with the record as a whole; (5) whether the medical source is a specialist; and (6) other relevant factors brought to the ALJ's attention. *Id.*

An ALJ's decision regarding the claimant's RFC must afford an adequate basis for meaningful judicial review, apply the proper legal standards, and be supported by substantial evidence. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)). That being said, the RFC need not track any one particular medical opinion in the record. *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."). Further, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre*, 758 F.3d at 149; *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").

Here, Plaintiff asserts that the ALJ gave "significant weight" to certain medical opinions in the record but then failed to include all of the limitations described in those opinions or explain why he did not incorporate such limitations. ECF No. 10, at 4-20. Specifically, Plaintiff cites the opinions of Dr. Capicotto, Dr. Patel, Dr. Nemani, Dr. Eurenius, and Dr. Dees and argues that the ALJ erred by finding that Plaintiff could perform light work despite "the unanimous opinion of the doctors who offered specific opinions about Plaintiff's functional capacity . . . that Plaintiff was limited to, at best, sedentary work." *Id.* at 4. Plaintiff's argument is unavailing. Contrary to Plaintiff's characterization, the ALJ properly considered the medical opinions in the record, made an RFC finding that was supported by substantial evidence, and sufficiently explained his reasoning.

### 1. Dr. Capicotto

Dr. Capicotto, Plaintiff's treating orthopedist, completed a Medical Source Statement Of Ability To Do Work-Related Activities (Physical) in November 2013 and a Physical Residual Functional Capacity Questionnaire in January 2014. Tr. 590-596, 608-612.

Plaintiff first argues that Dr. Capicotto limited him to sedentary work. In his November 2013 opinion, Dr. Capicotto found that Plaintiff could occasionally lift or carry up to 10 pounds but never lift or carry over 10 pounds. Tr. 590. He also found that Plaintiff could only sit, stand, or walk for a total of 2 hours each in an 8-hour work day. Tr. 591. Plaintiff is correct that such limitations, if incorporated into the RFC, would have limited Plaintiff to sedentary work. *See* 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . [A] job is in this category if it requires a good deal of walking or standing."). But in January 2014, Dr. Capicotto found that Plaintiff was less restricted in those areas. In his later opinion, Dr. Capicotto indicated that Plaintiff could occasionally lift up to 20 pounds and "rarely" (as opposed to "never") lift 50

6

pounds. Tr. 610. He also found that Plaintiff could sit or stand/walk for a total of 4 hours each in an 8-hour work day. *Id.* Given Dr. Capicotto's January 2014 opinion, the ALJ was not required to incorporate the more restrictive limitations found in November 2013. *Veino*, 312 F.3d at 588 ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").

Plaintiff also argues that the ALJ failed to explicitly discuss why he did not incorporate certain aspects of Dr. Capicotto's opinions into the RFC. For example, Dr. Capicotto's November 2013 opinion indicated that Plaintiff should not be exposed to moving mechanical parts or vibrations. Tr. 594. The ALJ did not expressly state why he did not include such limitations in the RFC assessment. But based on the fact that these limitations were not included in Dr. Capicotto's January 2014 opinion or elsewhere in the record, the ALJ impliedly rejected them by not including them in the RFC. The Second Circuit has explained that "[w]hen . . . the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983). The ALJ made it clear in his decision that although he found Dr. Capicotto's opinions to have "great merit," he did not adopt them verbatim into the RFC assessment. Tr. 23-24.

### 2. Dr. Patel and Dr. Nemani

Dr. Patel and Dr. Nemani completed several Doctor's Narrative Reports for the State of New York Workers' Compensation Board. *See, e.g.*, Tr. 411, 415, 602, 605. In those reports, Dr. Patel and Dr. Nemani repeatedly found that Plaintiff was 75% temporarily impaired. *Id.* Plaintiff argues that "the 75% disability rating which they opined was synonymous with an opinion that Plaintiff cannot perform his past job" and means that Plaintiff could not perform his past work for 425 weeks. ECF No. 10, at 10. But 425 weeks is simply the maximum number of

weeks a worker in New York State could receive benefits for a 75% loss of wage earning capacity.  *See* Disability Classifications, New York State Workers' Compensation Board, *available at* http://www.wcb.ny.gov/content/main/onthejob/DisabilityClass.jsp (last visited March 29, 2017).  The ALJ reasonably found that "[a]lthough Dr. Patel and Dr. Nemani made conclusory statements, they consistently opined that the claimant had a partial disability.  Their findings are consistent with the medical evidence of record, which shows that the claimant has a back impairment that restricts him to light exertional work, but did not preclude him from all work activities."  Tr. 24.  Even if the evidence from Dr. Patel and Dr. Nemani could be interpreted as suggesting greater limitations than those in the RFC, the ALJ was entitled to weigh the evidence as a whole in determining that Plaintiff was capable of performing light work. *McIntyre*, 758 F.3d at 149 ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.").

### 3.     Dr. Eurenius

Dr. Eurenius examined Plaintiff on November 30, 2011 and provided a medical source statement regarding Plaintiff's physical limitations.  Tr. 405-408.  Dr. Eurenius opined that Plaintiff "is currently clearly limited in prolonged sitting, prolonged standing, walking more than a city block, climbing or descending more than four or five stairs, bending, lifting or carrying more than 5 lb[s], and kneeling due to chronic low back pain with neuropathic symptoms."  Tr. 408.  In his decision, the ALJ included a comprehensive description of Dr. Eurenius's report and provided the following reasoning for affording Dr. Eurenius's opinion "significant weight":

> Significant weight is given to Dr. Eurenius as a snapshot of the claimant's condition at that point in time since it was corroborated by the claimant's examining doctors in the medical evidence of record.  While Dr. Eurenius is correct in his assessment as of November 2011, subsequent treatment records display significant improvement in the claimant's condition following his examination.

Tr. 21.

Plaintiff takes issue with the fact that the ALJ "never explicitly stated what he accepted and what he rejected, or why any particular part of the opinion was rejected." ECF No. 10, at 12. But again, because the ALJ's rationale is evident from the record and affords an adequate basis for meaningful judicial review, the ALJ was not required to explicitly discuss how persuaded he was by every particular element of Dr. Eurenius's opinion. *Mongeur*, 722 F.2d at 1040. The ALJ clearly found that Dr. Eurenius's report was a good indication of Plaintiff's condition in November 2011, but decided not to include all of the limitations contained in that opinion because the record as a whole showed that Plaintiff's condition improved over time. For example, in contrast to Dr. Eurenius's 5 pound limitation, Plaintiff's treating physician Dr. Capicotto opined that Plaintiff could occasionally lift up to 20 pounds. Tr. 610.

    **4.**     **Dr. Dees**

On May 21, 2012, Dr. Dees performed a case analysis and determined that a sedentary RFC was appropriate "with the additional limitation of lifting/carrying no more than 5 lbs." Tr. 435. The ALJ gave Dr. Dees's case analysis "little weight" because it was based on inconsistent reasoning. Tr. 21-22. Specifically, the ALJ noted that Dr. Dees appeared to give more weight to Dr. Eurenius's one-time examination rather than Plaintiff's treating physicians, Dr. Capicotto and Dr. Patel, who saw Plaintiff for many years. Tr. 21. Because Dr. Capicotto and Dr. Patel provided opinions that were consistent with a reduced range of light work, the ALJ was entitled to discount Dr. Dees's analysis. *See* 20 C.F.R. § 404.1527(c)(4) (stating that "the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion").

**B. Credibility**

When the objective medical evidence alone does not substantiate the claimant's alleged symptoms, the ALJ must assess the credibility of the claimant's statements by analyzing the

following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures the claimant has taken to relieve symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vii).

In reviewing an ALJ's credibility assessment, courts must keep in mind that "[i]t is the function of the Commissioner, not the reviewing court, to 'resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant.'" *Id.* (quoting *Caroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).  "The ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Jackson v. Astrue*, No. 1:05-CV-01061, 2009 WL 3764221, at *7 (N.D.N.Y. Nov. 10, 2009) (citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)).  "[T]he court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain" if the finding is supported by substantial evidence.  *Id.* (quotation marks and citation omitted).

Here, the ALJ found that Plaintiff's statements regarding the intensity and limiting effects of his symptoms were not entirely credible.  Tr. 23.  Specifically, the ALJ noted that (1) Plaintiff described daily activities that were not limited to the extent one would expect given his alleged symptoms; (2) Plaintiff received treatment that "has been essentially routine and/or conservative in nature;" (3) Plaintiff reported improvement in his lower back following treatment; and (4) numerous examinations by Dr. Capicotto, Dr. Patel, and Dr. Nemani fail to reflect that Plaintiff's pain prevents him from performing his daily activities.  *Id.*

Plaintiff argues that the ALJ's credibility finding was deficient because it failed to consider Plaintiff's exemplary work history. ECF No. 10, at 20-21. This argument is unavailing for two reasons. First, the ALJ highlighted Plaintiff's "fairly steady work history" during the administrative hearing, Tr. 43, which indicates that the ALJ did consider that fact when he decided Plaintiff's case. Second, while "a good work history may be deemed probative of credibility, . . . it bears emphasizing that work history is just one of many factors that the ALJ is instructed to consider in weighing the credibility of claimant testimony." *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998). The fact that the ALJ did not specifically reference Plaintiff's strong work history in the decision "does not undermine the credibility assessment, given the substantial evidence supporting the ALJ's decision." *Wavercak v. Astrue*, 420 F. App'x 91, 94 (2d Cir. 2011).

## CONCLUSION

For the reasons stated above, Plaintiff's motion for judgment on the pleadings (ECF No. 9) is DENIED and the Commissioner's motion for judgment on the pleadings (ECF No. 11) is GRANTED. Plaintiff's complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: March 31, 2017
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court